Joseph Zelmanovitz (JZ 0085)
STAHL & ZELMANOVITZ
747 Third Avenue, Suite 33B
New York, New York 10017
(212) 826-6422
jzelmanovitz@szlawllp.com
     and
Elliot Hahn (EH 6087)
HAHN EISENBERGER PLLC
969 East 27th Street
Brooklyn, New York 11210
(347) 410-5800
ehahn@hahneisenberger.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SILVERWING MEDICAL LLC,

               Plaintiff,

     - against -

ADORAMA INC. and KITCHEN
WINNERS NY INC.,

               Defendants.
------------------------------------------------------------x

Case No.


**COMPLAINT**


**TRIAL BY JURY REQUESTED**

     Plaintiff Silverwing Medical LLC, by its attorneys Hahn Eisenberger PLLC and Stahl &

Zelmanovitz, for its complaint against defendants, alleges as follows:

**INTRODUCTION**

     1.     Plaintiff brings this lawsuit arising from the fraudulent scheme perpetrated by

defendants in the sale of counterfeit personal protection equipment to plaintiff.  Defendants

knowingly made false representations to plaintiff, including representations that the products to

be delivered were FDA certified when, as defendants knew, they were not.  Defendants made

{107633}     1

these fraudulent representations to induce plaintiff to part with millions of dollars for the purchase of these counterfeit products, while knowing that defendants and the public would rely on the efficacy and quality of the goods for protection during the Covid-19 pandemic and thereafter.

2.      Defendants' fraudulent scheme proximately caused plaintiff to sustain damages in excess of $5 million.  In addition, because of the reprehensible conduct engaged in by defendants, which was directed at plaintiff and which affects the safety and well-being of the public at large, defendants should be liable to pay punitive damages of $5 million.

## THE PARTIES

3.      Plaintiff Silverwing Medical LLC ("Silverwing") is a single-member limited liability company formed under the laws of New Jersey, with its principal place of business located at 101 Chase Avenue, Lakewood, New Jersey 08701.  Silverwing is engaged in the sale and distribution of medical-related supplies. Its sole member, Akiva Neger, is a citizen of the State of New Jersey, residing in Ocean County.

4.      Defendant Adorama Inc. ("Adorama") is a corporation formed under the laws of the State of New York, with its principal place of business located in Kings County, New York.

5.      Defendant Kitchen Winners NY Inc. ("Kitchen Winners") is a corporation formed under the laws of the State of New York, with its principal place of business located in New York County, New York.

## JURISDICTION AND VENUE

6.      This court has jurisdiction over this action pursuant to 28 U.S.C. §1332 *et seq.*, because the parties are citizens of different states and the matter exceeds the sum or value of $75,000.00, exclusive of interests and costs.

{107633}      2

7.      Venue is proper in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(1), because all defendants are residents of New York State and this is the judicial district in which defendant Adorama resides.  In addition, the parties agreed that exclusive venue for any action relating to the contract described below, shall be the judicial district in which Brooklyn is located.

## FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

### The Sales Contract and Product Specifications

8.      In February 2021, Adorama and Kitchen Winners, as "Seller," and Silverwing, as "Buyer," entered into a Sales and Purchase Agreement (the "SPA"), pursuant to which Adorama and Kitchen Winners agreed to sell to Silverwing one million boxes of Nitrile Gloves, with the following specifications: blue color, "Medical exam grade with FDA 510k," "LevMed" brand, and in assorted sizes as set forth in the SPA.  The unit price for each box is $10.50, for a total purchase price of $10,500,000.  A copy of the SPA is attached to this complaint at Exhibit A.

9.      It was of particular importance to Silverwing that the Nitrile Gloves be certified as "FDA 510k," because the intended ultimate purchasers of the gloves would be hospitals and nursing or acute care facilities which would require such certification. *See* 21 C.F.R. 807.

10.     In general, section 510(k) of the Food, Drug and Cosmetic Act, requires manufacturers to notify the FDA of their intent to market a medical device at least 90 days in advance.  A 510(k) pre-market submission is made to the FDA to demonstrate that the device to be marketed is safe and effective.

11.     Prior to the time that the SPA was executed, defendants provided Silverwing with documentation purporting to show that the factory in China that would be manufacturing the gloves was 510(k) certified.  The name of the manufacturer listed in this documentation was

{107633}      3

Zhangjiang Jiali Glove Products Co., Ltd.

12.     Prior to execution of the SPA, defendants sent a sample of the product to Silverwing. The sample was then sent by Silverwing to its customers, who reported that the sample was satisfactory. Upon information and belief, the sample sent by defendants was authentic and genuine so as to lull Silverwing into a false sense of security that all of the goods that were to be shipped would be of the same quality.

13.     At or about the time the SPA was executed, and pursuant to its terms, Silverwing wired to Adorama the sum of $1,050,000, as a 10% deposit for the products. The 90% balance of the purchase price for each shipment of goods was to "be paid to Seller within forty eight (48) hours of delivery of a trackable Bill of Lading for the shipment to Buyer."

14.     In compliance with the foregoing provision of the SPA, upon receiving the trackable bills of lading for shipments, Silverwing sent additional wires of funds at the direction of the defendants to their attorney, Mark Nussbaum, Esq., in the aggregate amount of $1,115,545. Thus, as of April 13, 2021, a total of $2,165,545 had been paid by Silverwing to defendants.

15.     The products delivered had to be in conformity with a "SGS report," which defendants were required to deliver to Silverwing in advance of the arrival of any of the shipments. An SGS report provides verification by an independent third-party, based on its inspection, as to the quantity, weight and quality of the goods, and its performance, as measured against various health, safety and regulatory standards.

**Silverwing's Discovery of the Fraud**

16.     Instead of receiving a "SGS report" before any of the goods arrived at port, defendants provided Silverwing with a report from V-Trust Inspection Service ("V-Trust").

{107633}     4

17.     Upon receipt of the V-Trust report, Silverwing noticed certain discrepancies or errors, as follows:

A.     The report date is March 25, 2021, two days *after* the first shipment was shipped on March 23, 2021, as stated in the bill of lading.

B.     The report states that it has been custom made for another entity, "GTS Limited," and not for defendants or Silverwing.

C.     The "P.O. No." on the report did not match Silverwing's purchase order number for the products.

D.     The pictures of the product in the report displayed a manufacturer name that was different than the one listed in the documentation provided by defendants at the time of contract as being a 510(k) certified manufacturer, and the pictures showed a product different than the samples previously sent to Silverwing by defendants.

18.     Defendants tried to downplay the first three discrepancies as immaterial errors. As to the discrepancy in manufacturer name, Mr. Mendel Bannon ("Bannon") of Kitchen Winners tried to assure Silverwing that the manufacturer of the product named in the V-Trust report, Quingdao Zhongyang Medical Equipment Co., Ltd.--although not the same manufacturer listed as having 510(k) certification in the documentation provided by defendants at the time of contract--was nevertheless 510(k) certified, and sent documentation on March 25, 2021, via WhatsApp text message, purporting to show FDA certification for Quingdao Zhongyang Medical Equipment Co., Ltd. This documentation did not, however, show 510(k) certification for the Quingdao company, but for yet another Chinese manufacturer:  ZhongHong Pulin Medical Products Co., Ltd.

19.     When this was brought to defendants' attention, Bannon of Kitchen Winners sent

{107633}     5

another WhatsApp text message on March 30, 2021, stating that Quingdao Zhongyang Medical

Equipment Co., Ltd. was a "secondary manufacturer" or subsidiary of ZhongHong Pulin

Medical Products Co., Ltd. (the company which did, in fact, have 510(k) certification).

Silverwing received from this supposed Chinese manufacturer a "letter" to confirm that it

manufactured the product "under our secondary factory . . . which is being manufactured all

under our 510K # K152712." However, the letterhead and company stamp on this letter

misspelled the company name as ZhongHong Pulon Medical Products Co., Ltd, with the name

Pulin (with an "i") misspelled as Pulon (with an "o").

20. Thereafter, in April 2021, Mr. Eli Neger of Silverwing telephoned Bannon of

Kitchen Winners and questioned why the name of the manufacturer ZhongHong *Pulon* Medical

Products Co. Ltd. was different from that appearing on the FDA website, ZhongHong *Pulin*

Medical Products Co. Ltd. Bannon responded that the FDA website must have contained an

error. Bannon also told Silverwing's representative, Isaac Fisher, that the name Pulon is simply a

matter of translation or pronunciation of the name Pulin.

21. By email dated April 22, 2021, Silverwing learned from Phoenix Luo, a contact

in China, that ZhongHong *Pulin* Medical Products Co. Ltd. actually has no relationship with

ZhongHong *Pulon* Medical Products Co. Ltd.

22. As of April 9, 2021, Silverwing had already paid defendants by wire transfer the

amount due for four shipments, $1,115,545, plus the initial deposit of $1,050,000, for a total of

$2,165,545, although Silverwing had not taken possession of any of the goods. Defendants

wanted to ship even more goods, but based on the questions concerning the prior shipments,

Silverwing declined to pay for any additional shipments until the matter was fully investigated.

23. When the first shipments of products ordered by plaintiff arrived at defendants'

{107633}        6

warehouse on April 13, 2021, Mr. Eli Marciano, a Silverwing representative, arrived to inspect the products. Marciano informed Eli Neger of Silverwing that the goods were not the same as the sample that had been provided earlier, and were inferior in quality.

24.     Defendants shrugged aside Silverwing's findings and serious questions about the authenticity of the product shipped to Silverwing, making excuses designed to have Silverwing accept the goods and order even more. Defendants repeatedly represented to Silverwing that the product was legitimate and authentic, as described in the SPA.

25.     Adding to Silverwing's suspicions was the fact that each bill of lading for the goods ordered appeared identical, with the stamps appearing in the exact same place as if they were carbon copies of each other with the bill of lading number inserted in the exact same place.

26.     By email from V-Trust to Silverwing's representative, Mr. Isaac Fischer, V-Trust stated that the V-Trust report that had been sent to Silverwing by defendants "was not the original version." The client's name on the report and the PO number were wrong.

27.     The goods ordered from and shipped by defendants contain a "UL" certification, which is a certification by Underwriters Laboratories as to product safety testing and certification. On April 21, 2021, Silverwing received from Mendel Bannon of Kitchen Winners a UL test report dated January 7, 2021, with respect to the product. By email dated April 21, 2021, from Silverwing's representative, Mr. Ross Newman, to Market Surveillance of UL, Mr. Newman asked UL to verify the report. By email dated April 21, 20121, from Mr. John Boyles, Lead Market Surveillance Engineer of UL LLC, to Mr. Newman, Mr. Boyles reported that the subject UL report "does not match the report that was issue [sic] by UL. This report has been modified changing the Applicant and Manufacturer information."

28.     Silverwing then pulled up the metadata for the January 7, 2021 UL report

{107633}     7

described above and discovered that it had been altered a few minutes before being sent to Silverwing on April 21, 2021.

29.     Because a FDA 510(k) designation is unique to each factory, by email dated May 26, 2021, Mr. Eli Neger of Silverwing inquired of the ZhongHong Pulin factory as to whether it had manufactured the product shipped to Silverwing and whether the factory had any relationship to either the Quingdao or "Pulon" factories, or to the LevMed gloves that were the subject of the contract. The "Pulin" factory replied by email dated May 27, 2021, that the letter and stamp that had been provided to Silverwing by defendants were counterfeit.

30.     On June 10, 2021, defendants' attorney, Zaki Tamir, Esq., then sent Silverwing a letter purportedly issued by ZhongHong Pulin Medical Products Co., Ltd., dated May 24, 2021, stating that it was an "Official Letter," and confirming that "our factory (ZhongHong Pulin Medical Products Co., LTD) manufactured LEVMED gloves which were packed in LEVMED brand boxes." The logo on this letter, however, differed from the logo appearing on ZhongHong Pulin's website and its LinkedIn page.

31.     On June 11, 2021, Eli Neger of Silverwing sent the letter that had been forwarded by attorney Tamir to Mr. Kevin Chao, a sales representative of ZhongHong Pulin Medical Products Co., LTD., asking for clarification as to the letter's legitimacy. Mr. Chao responded that he believed that the purported "Official Letter" forwarded by attorney Tamir appeared to be "fake" because the Chinese characters in the letter did not accurately match the Chinese spelling of the company name.

32.     In sum, defendants' representations concerning the manufacturer, the UL report, the V-Trust report, and the FDA 510k designation were all false. Essentially, defendants had lied to Silverwing about the key characteristics of the product sold.

{107633}     8

**FIRST CAUSE OF ACTION**
**(Fraud Against Kitchen Winners and Adorama)**

33.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-32

above, as if fully set forth herein.

34.     As detailed above, during the period from about February 2021 through June

2021, defendants repeatedly represented to Silverwing that (1) the factory ZhongHong Pulon

Medical Products Co. Ltd. was the factory that produced the product and had received the FDA

510k certification; (2) the "UL" designation on the product was authentic; (3) the V-Trust report

was authentic; (4) the bills of lading were authentic; (5) the factory ZhongHong *Pulon* Medical

Products Co. Ltd. that appeared on the documents and product boxes sent by defendants was the

same as ZhongHong *Pulin* Medical Products Co. Ltd., which had received the FDA 510(k)

certification, and that the variation in spelling was due to Chinese pronunciation; and (6) that the

goods to be shipped to Silverwing complied with the specifications contained in the SPA.

35.     These representations were false and defendants knew they were false when they

made them and repeated them to Silverwing.

36.     Defendants made these false representations in order to induce Silverwing to

purchase defendants' product, which product was bogus from inception, in that they were

manufactured in a factory lacking FDA 510(k) certification.  Moreover, defendants altered or

fabricated UL and V-Trust reports.  The goods were mislabeled, erroneously described, and

counterfeit.

37.     Silverwing relied on defendants' representations to its detriment, and such

reliance was justified and reasonable under the circumstances.  In particular, Silverwing relied on

the FDA 510(k) certification so as to be able to sell the product to hospitals, nursing homes and acute care facilities, which as a general matter would only purchase Nitrile Gloves bearing an authentic FDA 510(k) certification.

38.     Silverwing had obtained commitments from customers for the purchase of the product from Silverwing, but because the product turned out to be counterfeit Silverwing could not sell them.

39.     As a proximate result of the fraud perpetrated by defendants, Silverwing has sustained out-of-pocket damages in the amount of $2,165,445**.**

40.     Defendants' conduct was intentional, wanton, malicious, fraudulent and shocking to the conscience, was perpetrated in complete disregard of Silverwing's rights, and was injurious to the public which reasonably expects personal protection equipment to be safe, effective and approved by the FDA.

41.     By reason of the foregoing, in addition to compensatory damages, defendants should be liable to pay punitive damages in the sum of at least $5 million, so as to deter them and others similarly inclined from perpetrating in the future such acts of misconduct as they committed against Silverwing.

### SECOND CAUSE OF ACTION
### (Breach of contract against Kitchen Winners and Adorama)

42.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-32 above, as if fully set forth herein.

43.     Defendants breached the SPA by, *inter alia*, selling a product that was not in conformity with the product specifications set forth in the SPA.

44.     In addition, defendants breached the SPA by failing to provide a genuine SGS

{107633}      10

report prior to delivery, and instead provided an altered or counterfeit V-Trust report.

45.     Silverwing performed all parts of the SPA that were its obligation to perform.

46.     As a foreseeable result of defendants' breach of contract, Silverwing incurred damages in the amount of at least $5 million, the precise amount to be determined at trial, plus prejudgment interest.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment Against Kitchen Winners and Adorama)

47.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-46 above, as if fully set forth herein.

48.     Defendants have been enriched by the funds received from Silverwing, which funds were obtained as a result of defendants' fraudulent conduct, as described above.

49.     It would be against equity and good conscience to permit defendants to retain the funds paid by Silverwing, which defendants appropriated for themselves.

50.     As a proximate result of defendants' unjust enrichment, defendants should be liable to pay damages to Silverwing in the amount of $2,165,445.

WHEREFORE, plaintiff requests judgment against defendants, as follows:

A.      On the First Cause of Action, awarding plaintiff as against defendants, jointly and severally, compensatory damages in the amount of $2,165,445, plus punitive damages in the amount of $5 million;

B.      On the Second Cause of Action, awarding plaintiff as against defendants, jointly and severally, compensatory damages in the amount of $5 million, plus prejudgment interest;

C.      On the Third Cause of Action, awarding plaintiff as against defendants, jointly and severally, compensatory damages in the amount of $2,165,445;

{107633}      11

D.    Awarding plaintiff its costs and reasonable disbursements incurred in this action; and

E.    Granting plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 20, 2021

STAHL & ZELMANOVITZ
747 Third Avenue, Suite 33B
New York, New York 10017
(212) 826-6422
Jzelmanovitz@szlawllp.com

And

HAHN EISENBERGER PLLC
969 East 27th Street
Brooklyn, New York 11210
(347) 410-5800
ehahn@hahneisenberger.com

*Attorneys for Plaintiff*

By:_____
    Joseph Zelmanovitz (JZ 0085)

{107633}    12

Joseph Zelmanovitz (JZ 0085)
STAHL & ZELMANOVITZ
747 Third Avenue, Suite 33B
New York, New York 10017
(212) 826-6422
jzelmanovitz@szlawllp.com
          and
Elliot Hahn (EH 6087)
HAHN EISENBERGER PLLC
969 East 27th Street
Brooklyn, New York 11210
(347) 410-5800
ehahn@hahneisenberger.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

SILVERWING MEDICAL LLC,                          Case No.
                              Plaintiff,

          - against -


ADORAMA INC. and KITCHEN                          **JURY DEMAND**
WINNERS NY INC.,

                              Defendants.
----------------------------------------------------------x

          Plaintiff Silverwing Medical LLC, by its attorneys Hahn Eisenberger PLLC and Stahl &

Zelmanovitz, hereby demand trial by jury on all issues.


Dated: New York, New York
          July 20, 2021                          STAHL & ZELMANOVITZ
                                                 747 Third Avenue, Suite 33B
                                                 New York, New York 10017
                                                 (212) 826-6422
                                                 Jzelmanovitz@szlawllp.com
                                                          And
                                                 HAHN EISENBERGER PLLC
                                                 969 East 27th Street
                                                 Brooklyn, New York 11210
                                                 (347) 410-5800
                                                 ehahn@hahneisenberger.com
                                                 *Attorneys for Plaintiff*
                                          By:_____
                                                 Joseph Zelmanovitz (JZ 0085)


{107633}          1